# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

DEES NUTS LLC,
a Florida limited liability company,

      Plaintiff,

v.                              Case No. 3:23-CV-01006-MMH-JBT

FEASTABLES INC.,
a Delaware corporation,

      Defendant.
_____/

## PLAINTIFF DEES NUTS, LLC'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ....................................................................1

II.     STATEMENT OF FACTS ........................................................................... 2

   A.   Plaintiff's Federally Registered DEE'S NUTS Trademark ......................... 2

     1.   Genesis of the DEE'S NUTS Trademark and Subsequent Registration .. 2

     2.   Ensuring consistent quality of the flavored processed nuts sold under the DEE'S NUTS Brand ................................................................................ 3

     3.   Advertising and Marketing Efforts Building Goodwill in the DEE'S NUTS Mark ........................................................................................... 4

   B.   Defendant Feastables, Inc. Willfully Infringes Plaintiff's DEE'S NUTS Mark. ......................................................................................................... 6

     1.   Defendant Had Constructive and Actual Notice ..................................... 6

     2.   Defendant sells and markets in the same trade-channels and to a similar customer base ......................................................................................... 9

III.    LEGAL STANDARD ................................................................................. 9

   A.   Preliminary Injunction .............................................................................. 9

   B.   Trademark Infringement of a Federally Registered Mark ........................10

IV.     ARGUMENTS & AUTHORITIES............................................................. 11

   A.   Substantial likelihood Dees Nuts, LLC will succeed on the merits. .......... 11

     1.   The DEE'S NUTS mark is incontestable ............................................... 12

     2.   Defendant's Use of the DEE'S NUTS Mark is without Consent ............. 12

     3.   Defendant's use likely to cause forward-confusion, mistake, or to deceive 12

     4.   Defendant's DEE'S NUTS Mark is likely to cause reverse-confusion .... 18

B.    Plaintiff has been irreparably harmed and will continue to be irreparably harmed by Defendant's Conduct. ................................................................ 21

C.    The injury to Plaintiff outweighs any harm resulting from an injunction. ........................................................................................................... 22

D.    Issuing injunctive relief will serve the public interest .............................. 23

V.    BOND ........................................................................................................... 24

VI.   CONCLUSION ............................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*All. Metals, Inc., of Atlanta v. Hinely Industries, Inc.,*
  222 F.3d 895 (11th Cir. 2000) ......................................................................10

*Angel Flight of Georgia v. Angel Flight Am.,*
  522 F.3d 1200 (11th Cir. 2008) .................................................................. 23

*Anheuser-Busch, Inc. v. A-B Distrib., Inc.,*
  910 F.Supp. 587 (M.D. Fla. 1995) ..............................................................13

*Attrezzi, LLC v. Maytag Corp.,*
  436 F.3d 32 (1st Cir. 2006) ..........................................................................19

*BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc.,*
  792 F.Supp. 775 (M.D. Fla. 1991) ...............................................................21

*Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.,*
  112 F.3d 1125 (11th Cir. 1997) .................................................................. 23

*Chanel, Inc. v. chanel255.org,*
  2012 WL 1941598 (S.D. Fla. May 29, 2012) ............................................. 23

*Chanel, Inc. v. Italian Activewear of Fla., Inc.,*
  931 F.2d 1472 (11th Cir. 1991) .................................................................. 11

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,*
  508 F.3d 641 (11th Cir. 2007) .....................................................................16

*Davidoff & CIE, S.A. v. PLD Intern. Corp.,*
  263 F.3d 1297 (11th Cir.2001) ................................................................... 23

*Dieter v. B & H Indus. of Sw. Fla., Inc.,*
  880 F.2d 322 (11th Cir. 1989 ......................................................................13

*Dreamwerks Production Group, Inc. v. SKG Studio,*
  142 F.3d 1127 (9th Cir. 1998) .....................................................................19

*Fishing Hot Spots, Inc. v. Simon & Schuster,*
720 F. Supp. 746 (E.D. Wis. 1989) ............................................................. 23

*Frehling Enters., Inc. v. Int'l Select Grp., Inc.,*
192 F.3d 1330, 1335 (11th Cir. 1999)................................................13, 15, 16

*Jack Daniel's Properties, Inc. v. VIP Prod. LLC,*
599 U.S. 140 (2023) ......................................................................................10

Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,
51 F.3d 982 (11th Cir. 1995) .........................................................................10

*Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,*
122 F.3d 1379 (11th Cir. 1997) ......................................................................12

*Marketquest Grp., Inc. v. BIC Corp.,*
862 F.3d 927 (9th Cir. 2017)......................................................................... 20

*Pritchard v. Fla. High Sch. Athletic Ass'n, Inc.,*
371 F.Supp. 3d 1081 (M.D. Fla. 2019). ......................................................... 9

*Processed Plastic Co. v. Warner Communications,*
675 F.2d 852 (7th Cir.1982) ......................................................................... 22

*Sierra Club v. Georgia Power Co.,*
180 F.3d 1309 (11th Cir. 1999) ......................................................................10

*Sturgis Area Chamber of Commerce v. Sturgis Rally & Races, Inc.,*
99 F.Supp. 2d 1090 (D.S.D. 2000) ................................................................21

*SunAmerica Corp. v. Sun Life Assur. Co. of Canada,*
77 F.3d 1325 (11th Cir.1996) ....................................................................... 23

*Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.,*
889 F.2d 1018 (11th Cir. 1989)..................................................................... 22

*Tiramisu Int'l LLC v. Clever Imports LLC,*
  741 F.Supp. 2d 1279 (S.D. Fla. 2010) ............................................................ 22

*Univ. of Tex. v. Camenisch,*
  451 U.S. 390 (1981) ........................................................................... 9, 10

*Visible Sys. Corp. v. Unisys Corp.,*
  551 F.3d 65 (1st Cir. 2008) ..................................................................... 18

*Welding Servs., Inc. v. Forman,*
  509 F.3d 1351 (11th Cir. 2007) ................................................................. 12

*Wreal, LLC v. Amazon.com,*
  38 F.4th 114 (11th Cir. 2022) ............................................................. passim

**Statutes**

15 U.S.C. § 1057(b) (2010) ........................................................................ 12

15 U.S.C. § 1115(a) (2002) ........................................................................ 12

15 U.S.C. § 1116(a) (2020) ........................................................................ 20

15 USC § 1114(1)(A) (2005) ....................................................................... 10

**Treatises**

4 McCarthy § 23:10 (2023). ....................................................................... 11

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Dees Nuts, LLC ("Plaintiff" or "Dees") (together with its subsidiaries and affiliates) files this MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW ("Motion"), seeking preliminary injunction to restrain and enjoin Defendant Feastables, Inc. ("Defendant" or "Feastables") and all persons acting on Feastables behalf, in concert with Defendant, or under Defendant's control from using any of Dees' trademarks, selling any products or services using Dees' trademarks, and advertising any products or services using any of Dees' trademarks. In support of this Motion, Dees submits the affidavits of Brian A. Ditore (**Exh. 1**) and Lisa Hurst (**Exh. 2**), and states as follows:

## I.  PRELIMINARY STATEMENT

For more than a decade, Dees has built partnerships with retailers and wholesalers to provide consumers with a healthy option for processed nuts. Conducting business under the DEE'S NUTS brand, Dees and Mr. Ditore have developed its reputation as an industry leading nut provider using healthy and unique ingredients for various offerings, such as "Nanner Pudding Gourmet Peanuts," "Dill Pickle Gourmet Peanuts," "Ranch and Siracha Gourmet Peanuts," and "Hot Cheddah Gourmet Peanuts."

Dees' goodwill established over the last 12 years is now being harmed and usurped by Defendant's recently launched brand using the mark DEEZ NUTZ for chocolate peanut bars. Defendant's chocolate peanut bars are being sold through the same trade channels and advertised through the same marketing channels used by Dees to sell its DEE'S NUTS products. Plaintiff's registered DEE'S NUTS mark and Defendant's DEEZ NUTZ mark are visually and phonetically similar. The

DEE'S NUTS peanut products and DEEZ NUTZ chocolate peanut bar both contain processed nuts as a significant ingredient. DEE'S NUTS peanut products and DEEZ NUTZ chocolate peanut bars are marketed to and target similar customer bases. Defendant's DEEZ NUTZ mark has caused actual reverse consumer confusion and is likely to cause forward confusion. Consumers have been and will continue to be confused about which brand they are purchasing, the affiliation or association between the brands, and which brand is the senior user or the junior user.  Sponsors will likely be confused about spelling of names in advertising and marketing due to the common interchangeability of "s" and "z".  Retailers will likely be confused about which brand they are purchasing and how to market each brand to avoid the likelihood of confusion.

Defendant has only recently announced and commenced use of the DEEZ NUTZ mark for its chocolate peanut bar, making reversion to another non-infringing name feasible and appropriate. To prevent the inevitable and ongoing consumer confusion and irreparable harm, Dees respectfully requests this court enter a preliminary injunction and return the parties to the *status quo ante*.

## II. STATEMENT OF FACTS

### A.    Plaintiff's Federally Registered DEE'S NUTS Trademark

*1.  Genesis of the DEE'S NUTS Trademark and Subsequent Registration*

In 2011, Brian Ditore created and began using the trademark DEE'S NUTS in connection with flavored peanut snacks ("DEE'S NUTS Mark). Mr. Ditore is the predecessor in interest to, and current principal of, Plaintiff Dees Nuts LLC. Mr. Ditore chose to brand his nut company after his grandmother, Adeline D'amore, who many knew as "Mrs. Dee." Her laughter and belief that life should not be taken too seriously inspired Mr. Ditore to select a trademark that paid homage to her and

embodied her comedic flair. Those considerations resulted in the selection of the DEE'S NUTS Mark for the family owned and operated nut company.

At the outset, Mr. Ditore understood the importance of branding, market exposure, and trademark rights. Mr. Ditore submitted an intent-to-use application for trademark registration of the DEE'S NUTS Mark (Ser. No. 85346479) with the United States Patent and Trademark Office ("USPTO") in connection with processed nuts on June 15, 2011. A certificate of registration was issued on September 25, 2012 (Reg. No. 4215028) for the DEE'S NUTS Mark.

A Combined Declaration of Use and Incontestability under Sections 8 and 15 for the DEE'S NUTS Mark was accepted and processed by the USPTO on November 21, 2017. Mr. Ditore formed Plaintiff, Dees Nuts LLC, on October 21, 2021, to operate the business going forward and assigned the DEE'S NUTS Mark to Dees. After assignment, a Combined Section 8 Declaration of Use and Section 9 Application for Renewal of Registration for the DEE'S NUTS Mark was filed with the USPTO and accepted on December 8, 2022. (**Exh. 1–A**).

2. *Ensuring consistent quality of the flavored processed nuts sold under the DEE'S NUTS Brand*

Since the inception of the DEE'S NUTS Mark, Dees and Mr. Ditore have expended significant resources researching, developing, and marketing products which can be manufactured, processed, and packaged to ensure a consistently excellent consumer experience when eating DEE'S NUTS products. Dees has invested over $100,000 over several years of market research and product development for flavor profiles used in DEE'S NUTS products. Developing flavor profiles is a complex process which encompasses identifying flavors desirable to the target market, ensuring those flavors are achievable using ingredients meeting

quality and nutritional standards, and confirming the resulting flavored product will meet target retailer requirements and maintain adequate shelf life.  Meeting and balancing those criteria have been critical to the success of the DEE'S NUTS Mark. The damage caused when consumers are confused by an infringing product is irreparable and, if allowed to continue, presents an existential threat to Dees.

3. _Advertising and Marketing Efforts Building Goodwill in the DEE'S NUTS Mark_

After registration, a lengthy and dedicated grassroots campaign of brand exposure began with the DEE'S NUTS Mark and products being placed in front of consumers at large gatherings, which eventually included in 2016, the DEE'S NUTS Mark being emblazoned on an RV and trailer as part of the grassroots marketing efforts.  The RV, trailer, and branding modifications cost approximately $120,000.00.



From 2016 until present, the RV, trailer, and DEE'S NUTS products were regularly on tour and exposed to consumers at 45 separate reoccurring trade and special events to assist in directly reaching customers as well as to solicit potential independent gourmet retailers and retail distributors. (**Exh. 1 ¶ 19**).

In 2017, DEE'S NUTS products first appeared at national department stores, starting with Bed Bath & Beyond and their related retailer andThat! Popularity and market exposure of DEE'S NUTS products consistently grew and, in 2019, began being carried in over 100 ABC Fine Wine & Spirit retail locations in Florida as well as 7-Eleven convenience stores. Dee's most significant development came in September 2022 when Walmart began carrying DEE'S NUTS products in their retail locations across the United States. Plaintiff submitted extensive materials regarding the DEE'S NUTS products as well as Plaintiff's current and near-future operations to Walmart as part of the product selection process. Within those materials was Plaintiff's planned expansion of offerings to include a gourmet flavored peanut bar under the DEE'S NUTS Mark in 2024. (**Exh. 1-C**). In June 2023, Walgreens began carrying DEE'S NUTS products in their retail locations.

In addition to selling DEE'S NUTS products through retailers, Plaintiff offers its DEE'S NUTS products online directly to consumers through its e-commerce website (https://grabdeesnuts.com) and its Amazon vendor page. Mr. Ditore expended a substantial amount of time, energy, and resources in developing relationships with wholesalers across the U.S., resulting in DEE'S NUTS products being available nationwide from over one-hundred wholesale distributors in thirty-four (34) states. (**Exh. 1 ¶ 28**).

Plaintiff has also invested in sponsorship marketing to further build the goodwill and reputation of the DEE'S NUTS Mark. DEE'S NUTS products are a sponsor of the American Cornhole League, Xfinity/NASCAR #78 Anthony Alfredo, Maldonado Power Boat Racing P1 racing boat, and the U.S. Women's Rugby team. These sponsorships are estimated to cost at least $60,000 for 2023. Plaintiff has

also wrapped a race boat with the DEE'S NUTS Mark, similar to the branding used on Plaintiff's RV & Trailer. With these investments in the DEE'S NUTS Mark, sales have consistently grown year-over-year since 2011, with expected sales for 2023 to range between $4,000,000 to $5,000,000. Through the foregoing efforts, Plaintiff enjoys significant goodwill in the DEE'S NUTS Mark which is now being harmed by Defendant's willful infringement.

**B.   Defendant Feastables, Inc. Willfully Infringes Plaintiff's DEE'S NUTS Mark.**

   *1.   Defendant Had Constructive and Actual Notice*

Defendant Feastables is closely associated with its public proprietor, James Stephen Donaldson, otherwise known as internet content creator "MrBeast." Defendant's advertising generally includes Mr. Donaldson and Defendant has even adopted Mr. Donaldson's logo as part of its branding. The logo, depicted below, is a registered trademark (Reg. No. 5850491) and appears on Defendant's retail products.



Furthermore, Defendant's website shows Mr. Donaldson on the home page of its website (**Exh. 4**), shows Mr. Donaldson in numerous posts on its Facebook page (**Exh. 6**), states on its TikTok page in the biography section "snacks by MrBeast" (**Exh. 7**), states on its Instagram page in the biography section, "snacks by @mrbeast" (**Exh. 8**), and states on its Twitter/X page in the biography section,

"snacks by @mrbeast" **(Exh. 9)**. Mr. Donaldson also states on his Instagram page in the biography section "Go to your local Walmart, 7/11, Target, and Speedway in America to try @feastables you'll love it" with a link to Defendant's website (**Exh. 10**); he states on his YouTube channel in the biography section, "Go get your free box of Feastables while supplies last https://shopify.com/mrbeast (**Exh. 11**); and on his Twitter/X page in the biography section he places "feastables.com".(**Exh. 12**).

In December 2022, Plaintiff received a Google review left by username "Noah" who rated Plaintiff five-stars and left a single comment; "N u t". (**Exh. 2-A**). The profile photo for the username "Noah" is the same registered logo used by Defendant and Mr. Donaldson. Provided below is a comparison chart.

| Google Review (**Exh. 2-A**) |  |
|---|---|
| Defendant's Chocolate Peanut Bar |  |

| Mr. Donaldson's YouTube Channel |  |
| --- | --- |

On February 14, 2023, Plaintiff became aware of a video posted by James Stephen Donaldson under his handle (@MrBeast) on Facebook and Instagram. Titled "The biggest thing I've ever made," the video advertised a chocolate peanut bar under the name DEEZ NUTZ. (**Exh. 2-B**). After viewing the video, Mr. Ditore immediately took issue with the name DEEZ NUTZ as being nearly identical to the DEE'S NUTS Mark. Plaintiff subsequently sent cease-and-desist correspondence to Mr. Donaldson's company, Beast Holdings, LLC, to give notice that the DEE'S NUTS Mark was federally registered, and that confusion would likely result from the introduction of the DEEZ NUTZ chocolate peanut bar. (**Exh. 1-D**).

Counsel for Beast Holdings, LLC responded by letter on April 4, 2023, advising Plaintiff that Defendant Feastables, Inc. was the owner of the DEEZ NUTZ branding, not Beast Holdings LLC. (**Exh. 1-E**). Counsel for Beast Holdings, LLC also represented Feastables, Inc. and responded substantively to the cease-and-desist letter, advising that Feastables would continue to sell their infringing DEEZ NUTZ chocolate peanut bar.

Plaintiff sent a second cease-and-desist letter on May 15, 2023, reiterating that Defendant's use of DEEZ NUTZ was infringing on Plaintiff's federally registered DEE'S NUTS Mark. (**Exh. 1-F**). Defendant indicated an interest in pursuing pre-suit settlement discussions, but after significant delays Defendant ultimately never met with Plaintiff. Since Defendant announced the DEEZ NUTZ product, Plaintiff's social media accounts have received numerous comments and

messages regarding association with or connection to the DEEZ NUTZ chocolate peanut bar. (**Exh. 2-C,D,E**)

2. _Defendant sells and markets in the same trade-channels and to a similar customer base_

Like Plaintiff's DEE'S NUTS products, Defendant Feastables Inc.'s DEEZ NUTZ chocolate peanut bar is available at national retail stores, including Walmart and 7 Eleven, as well as on their respective e-commerce websites and Amazon. In each of the foregoing locations, Plaintiff's DEE'S NUTS products were sold prior to the infringing DEEZ NUTZ product. Defendant also markets the infringing DEEZ NUTZ product through the same market channels as Plaintiff. Defendant uses its own social media presence and leverages the social media presence of Mr. Donaldson, who has hundreds of millions of followers, to regularly market its infringing product through Facebook, Instagram, TikTok and YouTube. Plaintiff also regularly markets its products through social media platforms which include Facebook, Instagram, TikTok and YouTube.

### III.   LEGAL STANDARD

## A. Preliminary Injunction

The quintessential purpose of a preliminary injunction for infringement is to preserve the parties' relative positions prior to the alleged infringement and maintain such status quo pending a resolution of the merits of the case. _Univ. of Tex. v. Camenisch_, 451 U.S. 390, 395 (1981); _Pritchard v. Fla. High Sch. Athletic Ass'n, Inc._, 371 F.Supp. 3d 1081, 1085 (M.D. Fla. 2019). To obtain a preliminary injunction, a movant must satisfy the following four elements by demonstrating: (1) there is a substantial likelihood of success on the merits; (2) irreparable injury will occur, or has occurred, unless the injunction issues; (3) that the threatened,

or existing, injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). It is not required for a movant to prove its case in full prior to the court's issuance of an injunction. *Camenisch*, 451 U.S. at 395. Courts have broad discretion when granting preliminary injunctions. See *Sierra Club v. Georgia Power Co.*, 180 F.3d 1309, 1310 (11th Cir. 1999).

## B. Trademark Infringement of a Federally Registered Mark

The Lanham Act protects consumers and the goodwill of trademark owners by preventing consumer confusion in the marketplace. A senior user establishes trademark infringement against a junior user by demonstrating: (1) ownership of a trademark; (2) priority of use over the junior user; and (3) the junior user's use is likely to cause consumer confusion, mistake amongst consumers, or deceive consumers. See 15 USC § 1114(1)(A) (2005); *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140, 147 (2023).

There are two distinct forms of likelihood of confusion: classical "forward confusion" and "reverse confusion. In determining whether a likelihood of "forward confusion" exists, the court considers: (1) the strength of plaintiff's mark; (2) similarity of the marks; (3) similarity of the goods; (4) similarity of sales methods; (5) similarity of advertising methods; (6) the Defendant's intent in using its mark; and (7) actual confusion, mistake, or deception of consumers in the marketplace. *All. Metals, Inc., of Atlanta v. Hinely Industries, Inc.*, 222 F.3d 895, 907 (11th Cir. 2000).

Reverse confusion has been developed over time to prevent the calamitous situation of a larger, powerful organization from usurping the identity of a smaller senior user. *See* 4 McCarthy § 23:10 (2023). A separate analysis of the seven likelihood of confusion factors for reverse confusion applies as follows: (1) the conceptual strength and commercial strength of the senior user's mark; (2) similarity of the marks; (3) similarity of the products; (4) similarity of sales outlets; (5) similarity of advertising; (6) defendant's constructive knowledge of plaintiff's mark and intent to deliberately push Plaintiff out of the market advertising saturation; and (7) actual consumer confusion among plaintiff's customers as to source following the launch of defendant's junior mark. *Wreal, LLC v. Amazon.com*, 38 F.4th 114, 127 (11th Cir. 2022) ("Reverse confusion occurs when a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user.").

## IV.   ARGUMENTS & AUTHORITIES

### A. Substantial likelihood Dees Nuts, LLC will succeed on the merits.

Defendant's DEEZ NUTZ mark used on its chocolate peanut bar infringes Plaintiff's DEE'S NUTS Mark. Plaintiff's Lanham Act claims for trademark infringement and unfair competition require showing Defendant used its mark in commerce without consent and would likely cause consumers to be confused, mistaken, or deceived. See *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991) ("[T]he same facts support a cause of action for unfair competition as for trademark infringement.").

1. *The DEE'S NUTS mark is incontestable*

Plaintiff's certificate of registration for DEE'S NUTS (TM Reg. No. 4215028) constitutes prima facie evidence of the validity of the DEE'S NUTS Mark. See 15 U.S.C. § 1057(b) (2010); 15 U.S.C. § 1115(a) (2002); see also *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 n.3 (11th Cir. 2007)("Registration establishes a rebuttable presumption that the marks are protectable or 'distinctive.'"). Plaintiff owns the DEE'S NUTS Mark and has held the exclusive right to use it in connection with processed nuts for over a decade.

2. *Defendant's Use of the DEE'S NUTS Mark is without Consent*

Plaintiff has not provided, nor has Defendant requested, permission to use the DEE'S NUTS Mark. Plaintiff immediately notified Defendant of the infringement of the DEE'S NUTS Mark and demanded that Defendant cease such infringement. (**Exh. 1-F**).   After receiving notice, Defendant refused to stop infringing the DEE'S NUTS Mark. Plaintiff has never given consent, express or implied, for Defendant's use of the DEE'S NUTS Mark.

3. *Defendant's use likely to cause forward-confusion, mistake, or to deceive*

Courts consider the following likelihood of confusion factors: (a) the type of protected mark; (b) similarity between the marks; (c) similarity between the goods; (d) similarity of trade channels; (e) similarity of advertising; (f) defendant's intent to misappropriate the proprietor's good will; and (g) the existence and extent of actual confusion. See *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997); See also *Welding Servs.*, 509 F.3d at 1360. "In the Eleventh Circuit, the type of mark and evidence of actual confusion are the most important factors." *Anheuser-Busch, Inc. v. A-B Distrib., Inc.*, 910

F.Supp. 587, 592 (M.D. Fla. 1995) (*citing Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322 (11th Cir. 1989)).

### a) <u>DEE'S NUTS Mark contains suggestive elements, a unique commercial impression, and is afforded a broad scope of protection</u>

Classifying the type of mark requires a determination of the mark's strength. *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). The stronger the mark, the greater the scope of protection afforded to it. *Id.* The four categories of distinctiveness, in increasing levels of protection, are: (i) generic; (ii) descriptive; (iii) suggestive; and (iv) arbitrary. *Id.* Generic marks are not entitled to protection because they merely refer to a particular class of goods or service providers. *Id.* Descriptive marks describe a characteristic or quality of an article or service, and are afforded the lowest level of protection. Suggestive marks "subtly connote something about the [good] so that a customer could use his or her imagination and determine the nature of the [good]." *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1182 n. 5 (11th Cir. 1985).

Plaintiff's products under the DEE'S NUTS Mark offer consumers a healthy option for processed nuts. The word "DEE'S" references a matronly figure, inspired by Mr. Ditore's grandmother, and is combined with the term "NUTS" to cleverly create a double entendre with lighthearted meaning. Plaintiff's mark is no less than a suggestive mark because it requires consumers to exercise imagination to connect the DEE'S NUTS Mark with Plaintiff's products and is afforded a broad scope of protection.

b) *Similarity of the marks*

Similarity between two marks takes into consideration the appearance, sound, connotation, and commercial impression of each mark. Here, Plaintiff uses the registered DEE'S NUTS Mark and Defendant uses the DEEZ NUTZ mark. The marks are highly similar in appearance with the only differences being (i) Defendant's terms end with "Z" while Plaintiff's end with "S" and (ii) Plaintiff uses an apostrophe to denote a possessive proper noun for DEE'S while Defendant uses the slang term DEEZ. Moreover, due to the similarity of the marks, retail stores, such as Walmart, display Plaintiff's products and Defendant's products when a search for DEEZ NUTZ is queried in Walmarts website. (**Exh. 14**). Walmart additionally provides search bar suggestions for "dees nuts" and "deesnuts" that suggest Defendant's products. (**Exhs. 2-G,H**). As to the sound of the marks, the two marks are phonetically identical and indistinguishable.

While Defendant attempts to argue in its April 4, 2023 response to Plaintiff's cease-and-desist letter that DEEZ NUTZ is a slang term with certain connotations defined in the Urban Dictionary and Dictionary.com that is distinctly different from Plaintiff's DEE'S NUTS Mark. However, it is clear by a review of consumer comments on Plaintiff's social media pages that the DEE'S NUTS Mark has maintained, since its inception the same connotation and commercial that Defendant is now using to profit from. (**Exhs. 1 ¶ 7, 2-B, 2-C**). Plaintiff identified this similarity in its May 15, 2023 letter to Defendant, but Defendant continued to continue its use of DEEZ NUTZ and announced on Instagram a Lamborghini give-away promotion in affiliation with 7-eleven on May 24, 2023 (**Exh. 1 ¶ 8, 1-H**).

The marks have the same commercial impression. Feastables and Mr. Donaldson regularly and unabashedly use the DEEZ NUTZ mark as a euphemism for testicles; a euphemism well understood by consumers. (**Exh. 2 ¶ 9, 2-B**). Well before Feastables existed, Plaintiff commenced using the DEE'S NUTS Mark to convey the same commercial impression. (**Exh. 2-C**).

Plaintiff's DEE'S NUTS Mark and Defendant's DEEZ NUTZ mark have highly similar appearances, indistinguishable pronunciations, identical connotations, and an identical commercial impression. This factor weighs in Plaintiff's favor.

       c) _Similarity of the goods_

Analyzing the similarity of the goods "requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." _Wreal, LLC_, 38 F.4th at 132. Both Plaintiff and Defendant provide goods in the snack food product industry. Plaintiff offers a variety of processed nuts with sweet and savory flavors, and Defendant offers a chocolate peanut bar containing processed peanuts. (**Exhs. 3, 4**). Prior to Defendant announcing its DEEZ NUTZ product, Plaintiff had researched and provided initial development materials to Walmart regarding Plaintiff's planned peanut bar product under the DEE'S NUTS Mark. Defendant has multiple intent-to-use applications pending for its FEASTABLE and FEASTABLES marks; each identify "nut-based snack foods" and chocolate candy bars as the products Defendant intends to sell. (**Exhs. 1-C, 5**). There is a clear overlap between the snacks that Defendant offers under the DEEZ NUTZ mark and the peanut snacks offered by

Plaintiff under the DEE'S NUTS Mark. (**Exh. 14**). This factor weighs in Plaintiff's favor.

> d) _Similarity of the trade channels_

This factor considers where, how, and to whom the products are sold. _Frehling_, 192 F.3d at 1339. While "the parties' outlets and customer bases need not be identical, some degree of overlap should be present." _Id._ Plaintiff and Defendant offer their goods in the same trade channels, which include retail stores Walmart and 7-eleven, e-commerce websites owned by the Plaintiff and Defendant (https://grabdeesnuts.com and https://feastables.com/)  and on Amazon.com. (**Exhs. 1,2,2-G,2-H,3,4, 14**). This factor also weighs in favor of Plaintiff.

> e) _Similarity of the advertising channels_

Parties engage in similar advertising channels when there is likely to be a significant overlap in the audience in which the parties advertise, such that a possibility of confusion could result. _Frehling_, 192 F.3d at 1339. Plaintiff has strategically invested and dedicated substantial resources to promoting its products under the DEE'S NUTS Mark at events and through social media. (**Exh. 1, 2**). Plaintiff has prominently identified itself as DEE'S NUTS to promote its various nut products. Defendant also advertises through its website and numerous social media accounts (**Exhs. 1-H, 2-B, 6, 7, 8, 9**) and regularly leverages Mr. Donaldson's internet fame for marketing (**Exh. 10, 11, 12**). This factor weighs in favor of Plaintiff.

> f) _Defendant's intent_

The question of intent is whether the defendant "'had a conscious intent to capitalize on [the plaintiff's] business reputation,' was 'intentionally blind,' or

otherwise manifested 'improper intent.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 648 (11th Cir. 2007)(quoting *Frehling,* 192 F.3d at 1335–41).

Plaintiff sent Defendant written notice to Defendant of the DEE'S NUTS Mark, registration thereof, with demand that Defendant cease infringing Plaintiff's federally registered DEE'S NUTS Mark. Defendant rejected Plaintiff's demands, asserting "there is no likelihood of confusion because the parties' respective marks are spelled differently, have different connotations and are applied to different products." As set forth herein, Defendant's assertion is error.

On information and belief, Defendant chose the name DEEZ NUTZ with knowledge of Plaintiff's market position, reputation, and trademark rights. Plaintiff believes that discovery will ultimately reveal that Defendant was either intentionally blind or chose to trade on the goodwill and reputation the DEE'S NUTS Mark has earned over the last 12 years. At the very least, the currently available evidence establishes that out of the innumerable marks that Defendant might have chosen to use in its re-branding, it chose to continue using the DEEZ NUTZ Mark with full knowledge of Plaintiff's existing and well-established use of DEE'S NUTS.

g) *Actual Confusion*

Defendant's use of DEEZ NUTZ has caused confusion among Plaintiff's consumers and will continue to cause confusion for potential consumers, exhibited by the immediacy of consumer confusion after Defendant announced its new product. Plaintiff only became aware of Defendant's DEEZ NUTZ product on February 15, 2023, after Defendant posted a video on Instagram, Facebook, and

TikTok, which has received more than 1.9 million likes over 17,000 comments on Instagram. (**Exh. 2 ¶ 9**)**.** While Plaintiff seeks an injunction now to prevent widespread confusion, discovery will show the extent of the confusion created in the market by Defendant's conduct.

4. *Defendant's DEE'S NUTS Mark is likely to cause reverse-confusion*

The same seven likelihood of confusion factors are analyzed when evaluating forward or reverse-confusion, but the analysis differs for four of the factors in the reverse-confusion context. Those four factors are strength of the mark, similarity of the marks, defendant's intent, and actual confusion in the marketplace; each of which are analyzed as follows:

a) *Relative strength of DEE'S NUTS Mark and DEEZ NUTZ*

Unlike forward-confusion, when determining the strength of a mark, the court should consider "the conceptual strength of the plaintiff's mark and the commercial strength of the defendant's mark." *Wreal*, 38 F.4th at 129 (citing *Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65 (1st Cir. 2008) ("[i]n a reverse-confusion case, the focus is on the relative strengths of the marks so as to gauge the ability of the Junior user's mark to overcome the senior user's marks.")). Here, Defendant launched its DEEZ NUTZ mark with a major nationwide advertising campaign resulting in Defendant's advertisements being viewed by millions of consumers. The DEEZ NUTZ product was immediately sold across the U.S. in retail stores and online e-commerce websites, giving Defendant the ability to overwhelm the public recognition and goodwill Plaintiff has developed for over a decade in the DEE'S NUTS Mark. Shortly after Defendant launched its DEEZ NUTZ product, Plaintiff began receiving negative comments from consumers alluding to Plaintiff being a copier of Defendant or stealing Defendant's DEEZ

NUTZ brand. (**Exh. 2-D,E,F**).  Plaintiff's good will in the DEE'S NUTS Mark is now subject to the whims of Defendant who has shown no desire to correct the false perception amongst potential consumers that Plaintiff has somehow "copied" Defendant's source identifiers. This false perception is ever worsening due to Defendant's overwhelming advertising reach and campaign. This factor favors Plaintiff.

### b) _Similarity of the Marks with Defendant's "Feastables"_

Marks need not be identical and may utilize different spellings and capitalizations and still be similar enough to cause a likelihood of reverse-confusion. _Wreal,_ 38 F.4th at 130-31(citing _Dreamwerks Production Group, Inc. v. SKG Studio_, 142 F.3d 1127, 1130 (9th Cir. 1998). In _Dreamwerks_ the court found "Dreamwerks" and "DreamWorks" similar, noting the "perfect similarity of sound," "similarity of meaning," and similarity of sight even with differences in spelling and capitalization, as consumers "might shrug off the differences in spelling and capitalization." _Dreamwerks Prod. Grp. Inc.,_ 142 F.3d at 1131.  A similar conclusion was reached in _Wreal_ where Amazon's "fireTV" and "FyerTV" were held to be similar marks.

Of greater importance in _Wreal_ was the holding that use of a house mark in conjunction with the junior trademark will aggravate reverse-confusion by reinforcing association of the trademark with the house mark. _Wreal_, 38 F.4th at 131. (_citing Attrezzi, LLC v. Maytag Corp._, 436 F.3d 32, 39 (1st Cir. 2006)). Defendant consistently uses the DEEZ NUTZ mark in connection with its FEASTABLES house mark, making this factor weigh in favor of Plaintiff (**Exhs. 4, 14**).

### c) *Defendant's intent*

For reverse-confusion the court has adopted a modified version of the intent factor, in which indicia of intent may come from a variety of sources:

> At one extreme, intent could be shown through evidence that a defendant deliberately intended to push the plaintiff out of the market by flooding the market with advertising to create reverse confusion. *Intent could also be shown by evidence that, for example, the defendant knew of the mark, should have known of the mark, intended to copy the plaintiff, failed to conduct a reasonably adequate trademark search, or otherwise culpably disregarded the risk of reverse confusion.* The tenor of the intent inquiry shifts when considering reverse confusion due to the shift in the theory of confusion, but no specific type of evidence is necessary to establish intent, and the importance of intent and evidence presented will vary by case.

*Wreal*, 38 F.4th at 136 (*quoting Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927 (9th Cir. 2017)) (emphasis added). Defendant received multiple written notices from Plaintiff and rejected Plaintiff's demands. Defendant was aware of Plaintiff's DEE'S NUTS Mark and, given the modified intent standard for reverse-confusion, this factor favors Plaintiff.

### d) *Actual Confusion*

Evidence of actual confusion is considered the best form of evidence demonstrating likelihood of confusion caused by a defendant's junior use. There is undoubtedly actual consumer confusion in this case, evidenced by Lisa Hurst's affidavit. (**Exh. 2-D,E,F**). Ms. Hurst addresses instances where consumers have accused Plaintiff of copying Defendant's brand, of being a "fake ahh Mr Beast brand," and being sarcastically told on Plaintiff's social media page that "you totally didn't copy Mr. Beast chocolate bar." Even when Plaintiff announced DEE'S NUTS

products were being offered in Walgreens, a consumer asked, "Doesn't Mr. Beast have a deez nuts?" It is well established that even the smallest amount of actual confusion can be highly probative to likelihood of confusion, and the instances of actual consumer confusion show this factor to favor Plaintiff.

**B.    Plaintiff has been irreparably harmed and will continue to be irreparably harmed by Defendant's Conduct.**

A presumption of irreparable harm arises once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim. See *BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc.*, 792 F.Supp. 775, 784 (M.D. Fla. 1991) ("The law is well settled that the existence of a likelihood of confusion constitutes irreparable injury, as a matter of law, sufficient to satisfy the requirements of Federal Rule of Civil Procedure 65."); 15 U.S.C. § 1116(a) (2020) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm ... upon a finding of likelihood of success on the merits ... in the case of a motion for preliminary injunction").

Beyond the presumption, irreparable harm is extremely likely in this case. Plaintiff lacks control over the DEEZ NUTZ products offered by Defendant as to quality of taste, quality of ingredients and quality of nutrition. There is substantial risk that consumers confused as to the source of the DEEZ NUTZ product and dissatisfied with the quality of same will incorrectly form a negative opinion of Plaintiff as well as Plaintiff's products sold in connection with the DEE'S NUTS mark. Plaintiff's inability to control its reputation amongst consumers is the quintessential irreparable harm that a preliminary injunction is intended to prevent. See *Sturgis Area Chamber of Commerce v. Sturgis Rally & Races, Inc.*, 99 F.Supp. 2d 1090, 1101 (D.S.D. 2000) ("In evaluating the threat of irreparable

harm, the court may ... consider the potential loss of control over the quality of plaintiff[s'] [goods], [and] the risk of damage to ... plaintiff[s'] reputation and [trademark] from continuing use of an infringing mark. When a likelihood of confusion exists, [plaintiff's] lack of control over the quality of Defendants' goods constitutes an immediate and irreparable injury, regardless of the actual quality of those goods.").

"It is generally recognized in trademark infringement cases that (1) there is not [an] adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018 (11th Cir. 1989)(quoting *Processed Plastic Co. v. Warner Communications*, 675 F.2d 852, 858 (7th Cir.1982)). Accordingly, Defendant's trademark infringement and unfair competition, by nature, have caused and will continue to cause irreparable injury to the goodwill and reputation of Plaintiff.

## C.   The injury to Plaintiff outweighs any harm resulting from an injunction.

Prohibiting a defendant from using a protected mark "cannot cause a hardship for [a defendant] that could outweigh the harm suffered by [a plaintiff] through the illegal use of [the plaintiff's] mark." *Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F.Supp. 2d 1279 (S.D. Fla. 2010). In the present case, Defendant is using its DEEZ NUTZ mark, which is phonetically identical and visually similar to Plaintiff's DEE'S NUTS Mark, in identical trade channels to a similar customer base. (**Exh. 2**-**F**).  Defendant was also placed on notice of Plaintiff's registered trademark for DEE'S NUTS within weeks of Defendant launching its DEEZ NUTZ brand. (**Exhs. 1, 1**-**D**). Should Defendant be allowed to continue its use of the infringing DEEZ NUTZ mark, Plaintiff risks the loss of sales, goodwill, and damage

to its reputation in the marketplace, which is evidenced in various social media posts by consumers. **(Exhs. 2-C,D,E)**. Defendant, on the other hand, has no legal or equitable right to infringe the DEE'S NUTS Mark, and thus will not incur any cognizable hardship. Furthermore, under its house brand FEASTABLES, Defendant is presently selling other peanut butter chocolate snacks without the use of DEEZ NUTZ mark. (**Exh 13**).  As such, the use of Defendant's house brand FEASTABLES in connection with DEEZ NUTZ exacerbates the irreparable harm caused by the likelihood of reverse confusion, while also mitigating potential harm, brought from the issuance of a preliminary injunction; similar to its other peanut butter chocolate snack products, Defendant could sell its FEASTABLES peanut butter chocolate bar without the DEEZ NUTZ mark. See *Wreal*, 38 F.4th at 131.

## D.    Issuing injunctive relief will serve the public interest

It is in the public interest to prevent consumers from being misled by Defendant's products in the marketplace. *Angel Flight of Georgia v. Angel Flight Am.*, 522 F.3d 1200, 1209 (11th Cir. 2008) (*citing Davidoff & CIE, S.A. v. PLD Intern. Corp.*, 263 F.3d 1297, 1304 (11th Cir.2001)(There is a long line of trademark cases, in which this Court has explained it is in the public's interest to avoid unnecessary confusion.). "The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks." *Id.* "When inevitable confusion occurs in the marketplace due to unrestricted dual use of a trademark, the paramount value of the public interest demands some adjustment to the status quo." *Angel Flight of Georgia, Inc.*, 522 F.3d at 1208(*citing SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1337 (11th Cir.1996). Put plainly, "[t]he public has an interest in not being misled as to the origin, source, or

sponsorship of trademarked products." *Chanel, Inc. v. chanel255.org*, 2012 WL 1941598, at 6 (S.D. Fla. May 29, 2012). In the present case, the public interest would be served by the issuance of an injunction to avoid further confusion and mistakes by consumers.

## V. BOND

Plaintiff does not believe a bond is necessary since Defendant will be capable of operating under its house mark, "Feastables", and presently sells other peanut butter chocolate snack products without the use of the DEEZ NUTZ mark. (**Exh. 13**). See *Fishing Hot Spots, Inc. v. Simon & Schuster*,720 F. Supp. 746, 747-48 (E.D. Wis. 1989) (stating that the posting of security is not mandated under the Lanham Act when an injunction is granted); *Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1227 (11th Cir. 1997) (determining "the amount of an injunction bond is within the sound discretion of the district court"). Nevertheless, should the Court find a bond to be necessary, Plaintiff will be ready to post a bond to protect the DEE'S NUTS Mark.

## VI.   CONCLUSION

Plaintiff Dees Nuts, LLC respectfully requests that this Court enter an order granting a preliminary injunction against Defendant Feastables, Inc. to prevent any further imminent and irreparable harm and enjoin Defendant and all persons acting on Defendant's behalf, in concert with Defendant, or under Defendant's control from the following actions:

> (a)   using Plaintiff's DEE'S NUTS trademark, the mark DEEZ NUTZ, or any other mark that looks substantially similar to Plaintiff's trademark;

(b)    selling any products or services using Plaintiff's DEE'S NUTS trademark, the mark DEEZ NUTZ, or any other mark that looks substantially similar to Plaintiff's trademark;

(c)    advertising or marketing any products or services using any of Plaintiff's DEE'S NUTS trademark, the mark DEEZ NUTZ, or any other mark that looks substantially similar to Plaintiff's trademark.

Additionally, Plaintiff requests that this Court set this Motion for hearing, and after such hearing, that this Court issue a preliminary injunction against Defendant. Plaintiff also requests this Court to award Plaintiff such other relief as the Court deems just and appropriate.

Date: August 27, 2023              Respectfully submitted,

                                    _/s/ Crystal T. Broughan_
                                    Crystal T. Broughan, Esquire
                                    Florida Bar No.: 0863343
                                    Mitchell R. Ghaneie, Esquire
                                    Florida Bar No.: 115965
                                    Logan K. McEwen, Esquire
                                    Florida Bar No.: 98683
                                    MARKS GRAY, P.A.
                                    P.O. Box 447
                                    Jacksonville, Florida 32201
                                    Telephone: (904) 398-0900
                                    E-mail:      cbroughan@marksgray.com
                                                 mghaneie@marksgray.com
                                                 lmcewen@marksgray.com
                                                 sallen@marksgray.com
                                                 jpopovici@marksgray.com
                                                 breeves@marksgray.com

                                    *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing

document was sent via email to Counsel for Defendant, Paul Havel with Miller

Nash, LLP at paul.havel@millernash.com, this  27th  day of August 2023.

/s/*Crystal T. Broughan*
Crystal T. Broughan,

*Counsel for Plaintiff*